## W. J. KIERNAN *v.* LOUISA GERMAIN.

1. **LANDLORD AND TENANT.**   *Covenant to repair.   Lease to commence in the future.*
   If a landlord covenants to put premises in repair and the lease is to commence in the future, the performance of the covenant by the landlord is a condition precedent to the payment of the rent, and if the premises are not repaired at the time when the term begins the tenant is discharged from the lease.

2. **SAME.**   *Possession by the tenant.   Waiver.*
   But if under such circumstances the tenant goes into possession he is treated as waiving the condition precedent and must pay the rent whether the repairs are made or not.

3. **SAME.**   *Agreement to repair by a day after the term begins.*
   When the landlord agrees to repair before a certain day which does not arrive until after the term begins, entry by the tenant does not operate as a waiver, and if the repairs are not made at the time agreed upon the tenant may abandon the premises and is not chargeable with rent for the time actually occupied.

4. SAME.  *Abandonment.  When availed of.*

    The tenant must avail himself of the right to abandon *at once*, and if he remains in possession under the lease for any length of time he cannot abandon the possession because of the breach of covenant to repair.

5. SAME.  *Recoupment.*

    The extent of the right of a tenant entering or remaining in possession of the premises after the failure of the landlord to repair is to *recoup* the demand for rent because of the depreciation of the value of the rent by reason of the breach of agreement to repair.       ·    · ,

6. SAME.  *Surrender by the tenant.  Acceptance by landlord.*

    Where the leased premises are surrendered by the tenant to the landlord and accepted and enjoyed by the latter without any objection on his part, he cannot hold the tenant for rent after the surrender.

APPEAL from the Circuit Court of Lauderdale County.

HON. SAMUEL `H. TERRAL, Judge.

It appears that in December, 1881, the appellant, who was then occupying the premises at a rent of ten dollars per month, agreed to rent the same from the appellee from the 1st of January, 1882, to the 1st of September of that year at an increased rent—to wit, thirteen dollars per month—upon condition that the appellee would at once repair the premises, which were very much out of repair. No repairs were made, but the appellant continued to occupy the premises until the month of March, 1882, when he surrendered them to the appellee, who at once took possession of the premises and offered them for sale, making no objection to the abandonment by the appellant and giving him no notice that she intended to attempt to hold him for rent after the surrender of the premises. Appellant paid rents for January and February, 1882, and abandoned or surrendered the property in March, 1882.  Appellee brought suit for rent for April, May, June, and part of March, 1882, amounting to fifty-two dollars, for which amount she recovered judgment in the circuit court.

The court gave the following instructions for the plaintiff: (1) "The agreement to repair and subsequent failure to do so did not of itself release the defendant from his obligation to pay rent for the whole term, as contracted for, unless the jury believe there was

a provision in the contract that he might quit unless the repairs were made." (2) " If the house needed repairs to make it habitable or comfortable, the defendant would have had the right under the law to have them done at the expense of plaintiff; but if the defendant elected to quit before his time expired in consequence of such needed repairs, he is not released from his obligation to pay rent for the whole time, unless the plaintiff accepted the premises of defendant. And if the jury should so believe there was no acceptance of the surrender, they will find for the plaintiff the amount proven to be due for the whole term agreed upon." (3) " Unless the jury shall believe from the testimony that plaintiff accepted possession of the premises and agreed expressly or impliedly to relinquish the contract for rent, they should find for the plaintiff."

The following instructions, asked by the plaintiff, were *refused:*

(2) " Even if the jury should believe from the testimony that plaintiff did attempt to sell or rent after defendant abandoned the place, this does not release defendant from his obligation to pay full amount, as contracted for." (5) " Taking possession of the house by the plaintiff after defendant had abandoned it, if done by the plaintiff merely for the protection of the house and not as an acceptance of the release does not discharge defendant."

The following instructions were given for the defendant : (1) " The court instructs the jury that if they believe from the evidence that Kiernan gave notice that he was going to surrender the place and that plaintiff, Mrs. Germain, accepted the keys to the house and took possession of the premises, then that is an acceptance of the surrender and the jury should find for the defendant, Kiernan, as to all rent due after such surrender." (2) " The consent to the surrender may be implied from circumstances, and if the jury believe from the circumstances, as shown by the testimony, that there was an implied consent upon the part of Mrs. Germain, the plaintiff, for the defendant, Kiernan, to leave the place; then they will find for the defendant, Kiernan, for all rent charged after such leaving of the premises." (3) " That the burden of proof is on the plaintiff, and unless she establishes her case by a preponderance of

testimony they will find for Kiernan." (6) " If the jury believe from the evidence that defendant rented of plaintiff a house for a certain price per month and that plaintiff was to keep the premises in repair, and if they further believe that the plaintiff failed to keep the premises in repair, the defendant would not be liable for the agreed price, but for only the actual rental value of the premises."

*Whitaker & Bell,* for the appellant.

1. The first instruction for the plaintiff was erroneous. There need not have been an express proviso that appellant was to be allowed to quit the premises in case of failure on part of appellee to make the necessary repairs, and repairs, too, which had been expressly and implicitly agreed upon. That he was to have the right to abandon the premises in that event was clearly implied, because it was a legitimate inference, dictated by reason, justice, and common sense. Blackstone, Vol. II, Book IV, Chap. XXX, p. 443. The law upon which this instruction is based rested upon the idea that the obligation of the tenant to pay rent and the obligation of the landlord to repair were separate and distinct, each entirely independent of the other. But in this case the express agreement of the lessor to repair the premises and of the lessee to pay a larger rent than formerly *were dependent upon each other,* and a failure to perform one rescinds the other. Parsons on Contracts, Vol. I, Book III, Ch. III, § 2, p. 443.

2. The third instruction was error, because it was clearly inapplicable to the case at bar. Under the law upon which counsel rely for this instruction the lessee would be bound to leave the premises in good repair, " wind and water tight," and in a tenantable condition, *even though they were out of repair when he moved into them.* (See authority cited above.) This would inflict a palpable injustice and is not in keeping with the advanced liberality of American jurisprudence. To say that it was the duty of the lessee to repair the premises and *recoup* for the sum expended in making the house habitable would be manifestly erroneous in this case.

3. The surrender and peaceable acceptance. Upon this point there is no conflict in the evidence. " It is sufficient if there was an actual change of possession and an actual acceptance by the lessor

of the abandoned premises." " Or it may be an abandonment and surrender of the premises to the landlord *if he accepts the same* although no new contract is substituted." " It is a surrender when the lessee does something incompatible with the lease and the lessor *assents* or co-operates." Parsons on Contracts, Ch. III, § 4. The lease was abrogated just so soon as the appellant abandoned and the appellee accepted the surrender and told him where to leave the keys. It is axiomatic that no person can take advantage of his own laches. Not only did the appellee take possession of the property peaceably and accept the surrender without signifying her intention to hold the appellant responsible for the entire term, but she immediately advertised the premises for sale.

4. We feel no hesitation in insisting that the verdict of the jury is " manifestly wrong," and " the evidence greatly preponderates against it."

*G. H. Shamberger,* for the appellee.

The landlord is under no obligation to make repairs unless he expressly covenants to repair; and then his covenant to repair and that of the tenant to pay rent are independent of each other. A failure, therefore, of the landlord to make repairs does not discharge the tenant from his obligation to pay rent, nor will he be discharged from his obligation to pay rent when he has quit the premises on account of the landlord's failure to make the repairs, unless there is a provision to the effect that he may quit if the repairs are not made. Parsons on Con., Vol. I, 501, and authorities cited. There was no error in allowing the jury to take out, on their retirement, instructions refused. Section 1714, Code 1880, merely says that instructions given may be taken out by the jury, without saying whether they shall or shall not take out those refused. The latter part of said section, which makes it the duty of the clerk to first mark all instructions so given or refused, as the case may be, sufficiently provides against any mistake by the jury as to what the law is applicable to the case, as given to them by the court. We forbear any comment on the testimony as to the condition of the premises, as it is a well-settled principle that it is the province of the jury to settle conflicts in the testimony of witnesses. We

will, however, call attention to the testimony of Ramsey and Broach, wholly disinterested witnesses. This cause has been decided by two juries adversely to appellant, which, considering the amount involved, ought to have ended the litigation.

CAMPBELL, C. J., delivered the opinion of the court.

An accurate statement of the law applicable to the case made by this record is contained in Wood's Landlord and Tenant 816, in these words: "If a landlord covenants to put premises in repair, and the lease is to commence in the future, the performance of the covenant by the landlord is treated as a condition precedent to the payment of rent; and if the premises are not repaired at the time when the term begins the tenant need not enter under the lease, but is discharged therefrom. But if under such circumstances the tenant goes into possession he is treated as waiving the condition precedent and must pay the rent, whether the repairs are made or not; but when the landlord agrees to repair before a certain day which does not arrive until after the term begins, an entry by the tenant does not operate as a waiver, and if the repairs are not made at the time agreed upon the tenant may abandon the premises and is not chargeable with rent for the time he actually occupied, but he must avail himself of the right to abandon *at once,* and if he remains in possession under the lease for any length of time he cannot abandon the possession because of such breach." This quotation seems to be fully sustained by the adjudications referred to in the notes of the book mentioned and other authorities we have examined, and tested by it the instructions of the court to the jury are free from objection. Accepting as true that repairs were stipulated to be made before the term was to commence (1 January, 1882) and that the appellant was by such promise induced to remain in possession, he did not exercise his right to abandon the premises with sufficient promptitude. He remained about three months in possession, and in the absence of a sufficient explanation of that must be held to have lost his right to abandon the premises because of the failure to make the repairs. The extent of his right was to *recoup* the demand for rent because of depreciation of the

value of the rent by reason of the breach of the agreement to repair, and that was distinctly recognized by the sixth instruction for the defendant below.

The verdict of the jury was manifestly wrong on the case as presented by the record. It was contrary to the evidence and the instructions of the court. It is indisputable that the leased premises were surrendered by the tenant to the landlord, and were accepted and enjoyed by the latter, and we are not able to discover on what principle rent may be collected of the tenant after this surrender and acceptance. The tenant made known his purpose to leave the premises and the landlord made no objection, but seemed to acquiesce in the removal and gave direction where to leave the keys, and on the very day of the departure of the tenant obtained the keys from the person with whom the tenant left them by direction of the landlord, and moved into the vacated house and continued to occupy and advertised it for sale, offering immediate possession to a purchaser. No hint was given the tenant that there was objection to his leaving or that an attempt would be made to hold him for rent afterward.

A new trial should have been granted, and for the error of refusing it the

*Judgment is reversed and a new trial granted.*